# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, * | |
| v. * | Criminal No.: RDB-18-238 |
| DIOGO MIRANDA ARAUJO, * | |
| Defendant. * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

On December 6, 2018, Defendant Diogo Miranda Araujo ("Defendant" or "Araujo") pled guilty to wire fraud, in violation of 18 U.S.C. § 1343, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) and (c)(5). (ECF No. 37.) On April 2, 2019, this Court sentenced Araujo to a total term of 40 months' imprisonment with credit for time served in custody from April 19 to 26, 2018, and since December 6, 2018. (ECF No. 61.) Now pending is the Defendant's *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 80), in which he seeks immediate release from custody. Araujo claims that his immediate release is warranted due to the increased risk of exposure to the COVID-19 virus within his facility. (ECF No. 80.) Araujo does not allege that he suffers from any medical conditions which make him particularly susceptible to the COVID-19 virus. For the reasons that follow, the Defendant's Motion for Compassionate Release (ECF No. 80) is DENIED.

## BACKGROUND

On April 24, 2018, the Defendant was charged in a three-count Indictment along with two other individuals. (ECF No. 1.) On December 6, 2018, Defendant Araujo waived

1

indictment and agreed to proceed by information. (ECF No. 31.) That same day, a Superseding Information was filed, charging Araujo with wire fraud, in violation of 18 U.S.C. § 1343 (Count One); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) and (c)(5) (Count Two). Araujo pled guilty to both counts of the Superseding Information pursuant to a Plea Agreement. (ECF No. 37.)

In that Plea Agreement, Araujo made certain factual and guidelines stipulations. With respect to the facts, Araujo stipulated that in 2017 he and others devised and executed a scheme to defraud individuals and corporate victims in order to obtain money and property through the use of counterfeit payment cards (*i.e.*, credit cards and debit cards) and false identification documents. (ECF No. 32.) He specifically stipulated to possessing at least 355 counterfeit payment cards and possessing within a personal computer compromised data permitting access to approximately 432 payment card accounts. (*Id.*) Araujo used several counterfeit payment cards to make fraudulent purchases at various retail establishments, and the total value of merchandise purchased by the Defendant and his co-conspirators was at least $55,000. (*Id.*) With respect to the Federal Sentencing Guidelines, the Defendant stipulated to an anticipated adjusted offense level for wire fraud of 20. (*Id.*) He also agreed that the guideline sentence for aggravated identity theft was a term of imprisonment of two years to run consecutive to any sentence imposed for wire fraud. (*Id.*)

On April 2, 2019, this Court sentenced Araujo to 16 months' imprisonment as to Count One and 24 months as to Count Two to run consecutive to Count 1 for a total term of 40 months with credit for time served in custody from April 19 to 26, 2018 and since December 6, 2018. (ECF No. 61.) At this time, Araujo is set to be released in October of 2021.

On August 26, 2020, Araujo filed the presently pending *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 80), in which he seeks his immediate release from custody due the dangerous conditions at his facility created by the COVID-19 virus. Araujo is currently housed at FCI Berlin. There are no active infections of the COVID-19 virus among inmates at that facility at this time.[1] The Bureau of Prisons ("BOP") estimates that 487 inmates at FCI Berlin have received a COVID-19 vaccine.[2]

## ANALYSIS

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction; that the

---

[1] Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed June 28, 2021). There are currently four staff members with active infections. *Id.*
[2] Bureau of Prisons, *COVID-19 Vaccine Implementation*, https://www.bop.gov/coronavirus/ (last accessed June 28, 2021).

defendant is no longer a danger to the community; and a finding that a reduction in sentence is consistent with the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13.

In his Motion, Defendant Araujo claims that he was not required to exhaust administrative remedies in this case, as in August of 2020 he was being housed in a private facility outside the Bureau of Prisons ("BOP"), and there was no warden to whom he could bring a request for relief. (ECF No. 80.) However, even if the Defendant is correct on this matter, this Court cannot grant his Motion, as he has failed to allege extraordinary and compelling reasons for relief.

The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Of relevance here, the Commission has determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Additionally, the Commission has authorized the Bureau of Prisons to identify other extraordinary and compelling reasons "other than, or in combination with" the reasons identified by the Commission. U.S.S.G. § 1B1.13 cmt. n.1(D).

Although potentially useful guides, neither the Sentencing Commission's guidelines nor the Bureau of Prisons' regulations constrain this Court's analysis. As Judge Blake of this Court has recognized, the First Step Act embodies Congress's intent to reduce the Bureau of Prisons' authority over compassionate release petitions and authorizes the district courts to exercise

their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020). Exercising that discretion, this Court has determined that a heightened susceptibility to COVID-19 may present extraordinary and compelling reasons for a sentence reduction. *See, e.g.*, *United States v. Hurtt*, JKB-14-0479, 2020 WL 3639987, at *1 (D. Md. July 6, 2020).

In his Motion, Araujo does not allege that he suffers from any medical conditions which make him particularly susceptible to the COVID-19 virus. Instead, he asserts that the general threat of the COVID-19 virus in conditions of confinement are dangerous, even to younger individuals like himself. (ECF No. 80.) This Court has made clear that, "[w]hile the public health emergency created by COVID-19 is certainly a concern for all those in detention facilities, '[f]ear of contracting the novel coronavirus while incarcerated is not sufficient reason for granting compassionate release.'" *United States v. Johnson*, RDB-09-0272, 2020 WL 3791976, at *2 (D. Md. July 7, 2020) (citing *United States v. Taylor*, No. ELH-13-269, 2020 WL 3447761, at *6 (D. Md. June 23, 2020) (denying without prejudice compassionate release for failure to exhaust administrative remedies and also noting that defendant failed to identify any extraordinary and compelling reason to justify release)).

Additionally, while the COVID-19 pandemic created an elevated risk for Defendant Araujo and others in detention facilities, the rollout of three vaccines for COVID-19 (Pfizer, Moderna, and Johnson & Johnson), has lowered that risk in recent months. As Judge Hollander of this Court has noted, the BOP has been receiving vaccine shipments since December 16, 2020. *United States v. Graves*, No. ELH-18-17, 20201 WL 1909631, at *8-9 (D.

5

Md. May 11, 2021) (citing Walter Pavlo, *Federal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, Forbes (Dec. 21, 2020), https://www.forbes.com/sites/walterpavlo/2020/12/21/federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f). Since then, vaccination levels have increased: at FCI Berlin, where the Defendant is imprisoned, the BOP reported as of June 28, 2021, 120 staff members and 487 inmates have been inoculated with the vaccine.[3] Additionally, rates of infection have decreased: there are currently no cases of COVID-19 among inmates at FCI Berlin.[4]

Accordingly, for the reasons stated above, it is HEREBY ORDERED this 29th Day of June, 2021, that Defendant Araujo's Motion for Compassionate Release (ECF No. 80) is DENIED.

_____/s/_____
Richard D. Bennett
United States District Judge

---

[3] Staff who received their vaccination in the community rather than a BOP facility are not reflected in these figures. Bureau of Prisons, *COVID-19 Vaccine Implementation*, https://www.bop.gov/coronavirus/ (last accessed June 28, 2021).
[4] Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed June 28, 2021).